# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

| | |
|---|---|
| Hemlock Semiconductor Corporation,<br><br>　　　　Plaintiff,<br><br>-against-<br><br>Jinglong Industry and Commerce Group Co., Ltd.,<br><br>　　　　Defendant. | Case No. 15-<br><br>Hon. Thomas L. Ludington<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Hemlock Semiconductor Corporation ("Hemlock" or "Plaintiff"), for its Complaint against Jinglong Industry and Commerce Group Co., Ltd., ("Jinglong" or "Defendant"), alleges as follows:

## PARTIES

1.　Hemlock is a Michigan corporation with its principal place of business at 12334 Geddes Road, Hemlock, Michigan 49626.

2.　Jinglong is a Chinese limited corporation, whose principal place of business is located at NingJin Higher and New Technology Development Area, 055550 Hebei, China.

3.　Hemlock and Jinglong were parties to a certain Long Term Supply Agreements II and III, as amended, effective as of July 3, 2006 and June 18, 2007, respectively (together, the "Supply Agreements II and III"), out of which the claims in this Complaint arise, and pursuant to which Hemlock was obligated to manufacture solar grade polycrystalline silicon that Jinglong was obligated to purchase.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

5. Jinglong is subject to personal jurisdiction in this Court because it consented to the exclusive jurisdiction and venue of the U.S. District Court for the Eastern District of Michigan in Supply Agreements II and III. In addition, and independent of that consent, Jinglong has done and is doing business in the state of Michigan.

6. In addition, and independent of that consent, on information and belief, Jinglong has transacted business in the state of Michigan.

7. Venue is proper under 28 U.S.C. § 1391(b). Hemlock resides in the Eastern District of Michigan, and a substantial portion of the events giving rise to Hemlock's claims took place there. Further, Jinglong consented to the exclusive jurisdiction and venue of the U.S. District Court for the Eastern District of Michigan in Supply Agreements II and III.

## FACTS

8. Hemlock is a leading manufacturer of polycrystalline silicon that is used, <u>inter alia</u>, in the manufacturing of photovoltaic wafers, ingots, solar cells, and solar modules.

9. Upon information and belief, Jinglong is principally engaged in the manufacturing and distribution of solar grade solar cell and semiconductor device grade silicon products.

### The Parties Enter Into Supply Agreements II and III

10. On or about July 3, 2006, the Parties entered into Supply Agreement II, pursuant to which Jinglong agreed to purchase, and Hemlock agreed to supply, solar grade polycrystalline

silicon (the "Product"). On or about June 18, 2007 the Parties entered into Supply Agreement III, pursuant to which Jinglong agreed to purchase, and Hemlock agreed to supply, the Product.

11. Pursuant to Supply Agreements II and III, Jinglong agreed to purchase specified quantities of Product for a period of years, pursuant to an annual schedule, at specific prices.

12. Jinglong also agreed in Supply Agreements II and III that it would "take or pay" for the Product, such that Jinglong was "absolutely and irrevocably required" to pay the full purchase price of the Product scheduled for each year (the "Contract Quantity of Product,") regardless of whether Jinglong opted to order or take delivery of the Product.

13. The term of Supply Agreement II was to run from July 3, 2006 through December 31, 2018, with delivery of Product to begin in 2009. The term of Supply Agreement III was to run from June 18, 2007 through December 31, 2019, with delivery of Product to begin in 2010.

14. Hemlock fully performed and complied with all of its obligations under Supply Agreements II and III.

**Defendant's Breach and Plaintiff's Termination of Supply Agreements II and III**

15. Section 5 of Supply Agreements II and III states:

> "This Agreement is a 'take or pay agreement' such that Buyer is absolutely and irrevocably required to accept and pay for the contracted volume [of Product] per year over a 10-year period at the prices set forth in Exhibit B, subject to the adjustments described in Section 4 above. In the event that Buyer fails to order and take delivery of its contracted volume in a given year, HSC shall invoice Buyer for the differential at full contract price and Buyer will pay the same within 30 days of invoice date. Buyer specifically acknowledges and accepts that it will be liable for the full purchase price of volume differential between the quantity ordered and the contracted volume."

16. Jinglong did not order or take delivery of the full Contract Quantity of Product for the calendar year 2012 under Supply Agreements II and III.

17.     Jinglong did not order to take delivery of the full Contract Quantity of Product for the calendar year 2013 under Supply Agreements II and III.

18.     Jinglong did not order or take delivery of the full Contract Quantity of Product for the calendar year 2014 under Supply Agreements II and III.

19.     On August 16, 2013 Hemlock issued a Shortfall Notice and Invoice notifying Jinglong of its obligation to pay for the Contract Quantity of Product for the year 2012 under Supply Agreement II and Supply Agreement III in the amounts of $2,964,000.00 and $15,504,000.00, respectively, on or before September 15, 2013.

20.     Jinglong did not pay Hemlock the amounts set forth in the August 16, 2013 Shortfall Notice and Invoice by September 15, 2013, and indeed has never paid these amounts to Hemlock. Jinglong did not dispute these amounts.

21.     On January 23, 2014 Hemlock issued a Notice of Default and Shortfall Invoice notifying Jinglong that it had failed to pay the $18,468,000.00 identified in the August 16, 2013 Shortfall Notice and Invoice by September 15, 2013, and further notifying Jinglong of its additional obligation to pay for certain Contract Quantity of Product for the year 2013 under Supply Agreement II and Supply Agreement III in the additional amounts of $11,412,000.00 and $54,792,000.00, respectively, on or before February 22, 2014.

22.     Jinglong did not pay Hemlock the amounts set forth in the January 23, 2014 Notice of Default and Shortfall Invoice on or before February 22, 2014, and indeed has never paid these amounts to Hemlock.

23.     On March 13, 2015 Hemlock issued a Notice of Default and Shortfall Invoice notifying Jinglong that it had failed to pay the amounts identified in the August 16, 2013 and January 23, 2014 Notices of Default, and further notifying Jinglong of its additional obligation to

pay for contracted Product quantities for the year 2014 under Supply Agreement II and Supply Agreement III in the additional amounts of $11,112,000.00 and $53,352,000.00, respectively, on or before April 10, 2015.

24. Jinglong did not pay Hemlock the amounts set forth in the March 13, 2015 Notice of Default and Shortfall Invoice on or before April 10, 2015, and indeed has never paid these amounts to Hemlock.

25. To date, Jinglong has not paid Hemlock any of the invoiced defaulted amounts due under Supply Agreements II and III.

26. Section 10(b) of Supply Agreements II and III states:

> "Termination by HSC. HSC may, at its option, terminate this Agreement in the event of a failure to pay or other material breach by Buyer if that breach is not cured by Buyer within one hundred eighty (180) days after receipt of written notice. In the event of a termination due to Buyer's breach, in addition to all damages that can be established by HSC, Buyer shall be liable to HSC for the purchase price of Products as set forth in Paragraph 5."

27. On March 31, 2015 Hemlock terminated Supply Agreements II and III in accord with Section 10(b) of Supply Agreements II and III.

## COUNT I
## BREACH OF CONTRACT

28. Hemlock realleges each of the allegations in paragraphs 1 – 27 above as though fully set forth herein.

29. Supply Agreements II and III are valid, binding agreements between the parties, which agreements Defendant has breached, by failing to pay amounts owed.

30. Hemlock has fully performed and complied with all of its obligations under Supply Agreements II and III.

31. Supply Agreements II and III require Jinglong to "take or pay" for the Product, such that Jinglong is "absolutely and irrevocably required" to pay the full purchase price for the Product scheduled to be purchased each year, regardless of whether Jinglong actually takes delivery of the Product. Jinglong materially breached Supply Agreements II and III by failing to do so.

32. Supply Agreements II and III further provide that "[i]n the event of a termination due to Buyer's breach, in addition to all damages that can be established by HSC, Buyer shall be liable to HSC for the purchase price of Products as set forth in Paragraph 5."

33. Supply Agreements II and III were terminated on March 31, 2015.

34. As a result of Jinglong's breach, Hemlock has suffered and will continue to suffer damages.

## COUNT II
## ACCOUNT STATED

35. Hemlock realleges each of the allegations in paragraphs 1 – 27 above as though set forth fully herein.

36. Hemlock sent invoices and notices to Jinglong for certain amounts due under Supply Agreements II and III, the charges on which Jinglong has not disputed.

37. Hemlock has made demands for payment on numerous occasions, setting forth specific accounts for certain amounts due.

38. At no time has Jinglong disputed or objected to said accounts in whole or in part.

39. Jinglong has not paid said accounts in whole or in part.

40. By reason of the foregoing, Hemlock has been damaged to date in an amount to be determined at trial, but in any event not less than $448,075,008 ($69,020,464.00 and $379,054,544.00, in connection with Supply Agreements II and III, respectively).

## PRAYER FOR RELIEF

WHEREFORE, Hemlock demands:

1. Judgment in favor of Hemlock and against Jinglong on all Counts;

2. Damages in an amount to be proved at trial, including pre-award and post-award interest;

3. Attorney fees and costs in accordance with Section 26 of Supply Agreement II and Section 25 of Supply Agreement III; and

4. Such other relief at law or equity as the Court deems just and proper.

## JURY DEMAND

NOW COMES Plaintiff, by and through its attorneys, Braun Kendrick Finkbeiner P.L.C. and hereby demand a trial by jury on all issues so triable in the above-entitled matter.

BRAUN KENDRICK FINKBEINER P.L.C.

DATED: July 14, 2015

By:   s/Craig W. Horn
Craig W. Horn (P34281)
4301 Fashion Square Boulevard
Saginaw, MI  48603
(989) 498-2100
crahor@bkf-law.com
P34281

Of Counsel:

ORRICK, HERRINGTON & SUTCLIFFE LLP
J. Peter Coll, Jr.
John Ansbro
Alvin Lee
Thomas N. Kidera
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Attorneys for Plaintiff Hemlock Semiconductor Corporation*